UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILARIO SANCHEZ MONTALVO,<br><br>                    Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, PAMELA JO BONDI, Attorney General, TODD M. LYONS, Acting Director, Immigration and Custom Enforcement, JESUS ROCHA, Acting Field Office Director, San Diego Field Office, CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center,<br><br>                    Respondents. | Case No.: 26cv0199-GPC(SBC)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT** |

Before the Court is Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and motion for temporary restraining order seeking to be released from ICE detention. (Dkt. No. 2.) Respondents filed a response to the petition and the motion for temporary restraining order on January 20, 2026. (Dkt. No. 5.) Petitioner filed a traverse on January 21, 2026. (Dkt. No. 7.) Based on the reasoning below, the Court

1

GRANTS the petition for writ of habeas corpus and DENIES the motion for temporary restraining order as MOOT.

## Background

Petitioner Hilario Sanchez Montalvo ("Petitioner") was born in Mexico and unlawfully came to the United States on June 1, 2004. (Dkt. No. 1-2, Pet., Ex. A, Montalvo Decl. ¶ 1; Dkt. No. 5, Barroga Decl. ¶¶ 3, 4.) Around December 8, 2020, Petitioner was convicted of driving while under the influence of alcohol in violation California Penal Code section 23152(b) and was sentenced to 1 day in jail.[1] (Dkt. No. 5, Barroga Decl. ¶ 5.) He was also arrested for violating a court order which resulted in a conviction for "intent to annoy/harass: rep calls" under California Penal Code section 653m(b) on June 24, 2021. (*Id.*) He was sentenced to probation and ordered to attend domestic violence classes. (*Id.*)

On December 9, 2020, Petitioner was apprehended by Enforcement and Removal Operations ("ERO") following issuance of a Form I-200, Warrant for Arrest of Alien and placed into removal proceedings under Immigration and Nationality Act (INA) § 240, 8 U.S.C. § 1229a, via the filing of a Notice to Appear ("NTA"). (*Id.* ¶¶ 6, 7.) The NTA charged Petitioner with inadmissibility under INA §§ 212(a)(6)(A)(i) for being present without having been admitted or paroled. (*Id.* ¶ 7.) On March 31, 2021, Petitioner was released from custody upon posting an immigration bond and enrolled in the Alternative to Detention ("ATD") program. (*Id.* ¶ 8.) On January 26, 2023, an Immigration Judge ordered Petitioner removed to Mexico but granted withholding of removal to Mexico under INA § 241(b)(3) because his brothers and ten other members of his family were killed. (*Id.* ¶ 9; Dkt. No. 1-2, Pet., Ex. A, Montalvo Decl. ¶ 2.) Both Petitioner and DHS waived appeal, and the decision became final on January 26, 2023. (Dkt. No. 5, Barroga Decl. ¶ 9.)

---

[1] The Form I-213 report states Petitioner was convicted on April 22, 2021 for driving under the influence. (Dkt. No. 5, Ex. 3 at 20.)

2

26cv0199-GPC(SBC)

On February 7, 2023, ERO terminated Petitioner's participation in ATD but his immigration bond remained active, and he was ordered to report annually to ERO. (*Id.* ¶ 10.) When Petitioner failed to report to ERO as instructed on September 9, 2025, on September 18, 2025 ERO mailed Petitioner correspondence ordering him to report on October 20, 2025 for removal. (*Id.* ¶ 11.) On October 20, 2025, Petitioner reported to ERO and was detained to effectuate removal. (*Id.* ¶ 12.) He was provided with a Notice of Revocation of Release and his immigration bond was canceled. (*Id.*) Petitioner asserts that when he reported in on October 20, 2025, ICE took him into custody and said they were going to deport him. (Dkt. No. 1-2, Pet., Ex. A, Montalvo Decl. ¶ 6.) According to Petitioner, ICE did not tell him why they were revoking their decision to release him nor did they provide him an informal interview or a chance to contest his detention. (*Id.*)

Respondents state that ICE is working expeditiously as possible to identify a third country to which Petitioner may be removed. (Dkt. No. 5, Barroga Decl. ¶ 13.) On October 28, 2025, and November 7, 2025, the San Diego ERO requested assistance from ERO's Removal and International Operations (RIO) to identify a third country where Petitioner may be removed. (*Id.*) At this time, ICE is still in the process of identifying third countries that may be willing to accept Petitioner for removal. (*Id.* ¶ 14.)

Petitioner challenges the legality of his immigration detention and seeks to be released from detention arguing that (1) that his revocation of release violated 8 C.F.R. § 241.13(i)(3) for failing to provide notice and reasons for his detention and for failing to conduct an informal interview; (2) that his detention is unlawful because the government cannot show that there is a "significant likelihood of removal in the reasonably foreseeable future" as contemplated by *Zadvydas v. Davis*, 533 U.S. 678 (2001) and 8 U.S.C. § 1231. (Dkt. No. 1, Pet. at 5-11.[2])

/ / /

---

[2] Page numbers are based on the CM/ECF pagination.

## Discussion

### A. Legal Standard

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A prisoner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

### B. Analysis

Petitioner argues that ICE unlawfully revoked his release (1) in violation of 8 C.F.R. § 241.13(i)(2),[3] and (2) in violation of *Zadvydas* and 8 U.S.C. § 1231. (Dkt. No. 1 at 5-7; 7-11.) Respondents, by not disputing Petitioner's argument, concede they failed to follow their own regulations; instead, they argue that even if they failed to follow regulations, Petitioner has not shown he was prejudiced or that his constitutional rights were violated. (Dkt No. 5 at 5-6.) As to *Zadvydas,* they argue that it is premature to conclude "there is no significant likelihood of removal in the reasonably foreseeable future before permitting ICE an opportunity to complete the diligent efforts it has taken to effect Petitioner's removal." (*Id.* at 5.)

---

[3] Petitioner also raises a violation of 8 C.F.R. § 241.4(l) which are similar to the provisions of 8 C.F.R. § 241.13(i) concerning revocation of release.

  It is recognized that government agencies are required to follow their own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations.") (quoting *Ramon–Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984)).

  "[T]here are . . . two types of regulations: (1) those that protect fundamental due process rights, and (2) those that do not." *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). While a violation of the second type of regulation implicates due process only when the failure to comply with the regulation causes prejudice, a violation of the first type of regulation implicates due process concerns without a prejudice inquiry. *Id.* (where "the regulation violation . . . constituted a denial of [the defendant's] right to notice and an opportunity to respond, no showing of prejudice [was] necessary to establish a due process violation"). "There can be little argument that ICE's requirement that noncitizens be afforded an informal interview . . . derives from the fundamental constitutional guarantee of due process." *Ceesay v. Kurzdofer*, 781 F. Supp. 3d 137, 165 n.26 (W.D.N.Y. 2025) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (citation and internal quotation marks omitted)). Therefore, as the Court finds below, Respondents' violation of their regulations requiring notice and an opportunity to be heard "implicates due process concerns even without a prejudice inquiry." *See Raya-Vaca*, 771 F.3d at 1205.

  District courts have also held that where an immigration "regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute," like the opportunity to be heard, "and [ICE] fails to adhere to it, the challenged [action] is invalid . . . ." *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) (quotation marks omitted));

*see also Rokhfirooz v. LaRose*, — F. Supp. 3d —, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025); *Truong v. Noem,* No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases) (courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.").

8 U.S.C. § 1231(a) governs the detention of individuals with a final order of removal and provides that a noncitizen must be removed within 90 days. 8 U.S.C. § 1231(a)(1)(A). Once the removal period passes and the "alien does not leave or is not removed . . . the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id*. § 1231(a)(3). Section 1231(a)(6) "authorizes further detention if the Government fails to remove the alien during those 90 days." *Zadvydas*, 533 U.S. at 682. Detention however, is limited to "a period reasonably necessary to bring about the alien's removal from the United States" and "does not permit indefinite detention." *Id.* at 689. The Supreme Court has held that a six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. Release is not mandated after the expiration of the six-month period unless "there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Once ICE releases a non-citizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Dipraseuth v. Noem*, Case No.: 25-CV-3471 JLS (BJW), 2025 WL 3677674, at *2 (S.D. Cal. Dec. 18, 2025) (quoting *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal citation omitted)). 8 C.F.R. § 241.13 governs the release and revocation of release for noncitizens subject to a final removal order who are indefinitely detained.[4] As to revocation of release, 8 C.F.R. § 241.13(i)(2) provides that a

---

[4] 8 C.F.R. § 241.13 codified how *Zadvydas* should apply. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967 (Nov. 14, 2001).

noncitizen's supervised release may be revoked and may be returned to custody "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2); *Sun v. Noem*, No. 3:25-cv-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) ("ICE's own regulations thus place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future."). The procedures mandated by the regulations provide:

> (3) Revocation procedures. Upon revocation, [1] the alien will be notified of the reasons for revocation of his or her release. [2] The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. [3] The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. [4] The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

Here, Petitioner was ordered removed on January 26, 2023 but had been released on bond and enrolled in the ATD program since March 31, 2021, and presumably remained released because removal was not reasonably foreseeable at that time. Even though his participation in the ATD was terminated on February 7, 2023, he remained released on an immigration bond.

According to Petitioner and not disputed by Respondents, the presumptive six-month period expired in July 2023 after the order of removal became final on January 26, 2023. Therefore, the applicable provision for the revocation of Petitioner's release is 8 C.F.R. § 241.13(i). The government declares that Petitioner was provided with a Notice of Revocation of Release, (Dkt. No. 5, Barroga Decl. ¶ 12), but has failed to attached a copy of it or explain the contents of the Notice. Petitioner asserts that when he was

detained, ICE did not tell him the reason for the revocation of his release. (Dkt. No. 1-2, Montalvo Decl. ¶ 6.) Therefore, Respondents have failed to comply with § 241.13(i)(3) by failing to notify Petitioner the reasons for the revocation of his release.

Next, it is not disputed that Petitioner was not provided with the mandated informal interview promptly after being detained to allow him an opportunity to respond to the reasons for revocation and to submit evidence showing there is no significant likelihood that he will be removed in the reasonably foreseeable future. *See* 8 C.F.R. 241.13(i)(3). Accordingly, the Court concludes that Respondents violated their own regulations, 8 C.F.R. § 241.13(i)(3) by failing to show that Petitioner received proper notice of the revocation, and an opportunity to be heard.

Next, Petitioner argues that Respondents have not shown a change in circumstances such that there is now a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Respondents argue that such an argument is premature while they are currently diligently procuring his removal to a third country.

Under 8 C.F.R. § 241.13(i)(2), noncitizen's supervised release may be revoked and may be returned to custody "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[5] 8 C.F.R. § 241.13(i)(2).

Respondents merely state that they made two attempts, on October 28, 2025, and November 7, 2025, asking assistance from ERO's Removal and International Operations to identify a third country where Petitioner may be removed and that ICE is still in the process of identifying third countries that may be willing to accept Petitioner for removal. These actions only show that Respondents are in the initial stages of seeking to remove Petitioner to a third country. Respondents have failed to make a showing that Petitioner's

---

[5] "*Zadvydas* presumption of reasonable detention does not apply to re-detention; instead, the government bears the burden that the petitioner "may be removed in the reasonably foreseeable future." *Kazemi v. Casey*, Case No.: 25cv1926 DMS (DEB), 2025 WL 3179746, at *2 (S.D. Cal. Oct. 7, 2025).

removal is likely in the reasonably foreseeable future.  For example, they have not identified a third country willing to take him, nor provided any data or information as to how long it normally takes ERO to identify a third country willing to accept a foreign citizen.  Then once a third country is identified, Respondents do not explain the process and length of the process for a third country to accept a foreign citizen, and once accepted, Respondents do not explain the process and length of time for actual removal.  As such, Respondents have not demonstrated that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.  *See* 8 C.F.R. 241.13(i)(2); *see Baltodano v. Bondi,* Case No. C25-1958-RSL, 2025 WL 3484769, at *5 (W.D. Wash. Dec. 4, 2025) (government failed to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" because they "have offered no evidence that travel documents for petitioner have even been requested from any third country."); *Hoac v. Becerra,* No. 2:25-cv-01740-DC-JD, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future.").

Thus, the Court GRANTS the petition for writ of habeas corpus and Petitioner shall be released subject to his previous bond conditions.  *See Constantinovici v. Bondi*, -- F. Supp. 3d --, 2025 WL 2898985, at *6 (S.D. Cal. Oct. 10, 2025) (*citing Rokhfirooz v. Larose*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (granting a habeas petition and ordering the petitioner's release where the Government failed to comply with § 241.13); *Hoac v. Becerra,* No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner was likely to succeed on his unlawful re-detention claim because "there is no indication that an informal interview was provided").

## Conclusion

Based on the above, the Court GRANTS the petition for writ of habeas corpus and DENIES the motion for temporary restraining order as MOOT.  The Government shall

1  immediately release Petitioner from custody on the October 20, 2025 revocation of
2  release and arrest.  Petitioner shall comply with all conditions that were in effect before
3  his October 20, 2025 re-detainment.  The parties must also file a joint status report to
4  confirm that Petitioner has been released on or before **January 26, 2026.**  The Clerk of
5  Court shall close the case.
6          IT IS SO ORDERED.
7      Dated:  January 22, 2026

Hon. Gonzalo P. Curiel
United States District Judge